STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

ANGELA LEONARDS

VERSUS

CARMICHAEL'S CASHWAY PHARMACY,

INC., ET AL.

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION – DISTRICT 04
PARISH OF LAFAYETTE, NO. 07-05204
ADAM C. JOHNSON, WORKERS' COMPENSATION JUDGE

**********

SHANNON J. GREMILLION
JUDGE

**********

Court composed of Shannon J. Gremillion, John E. Conery, and Gary J. Ortego, Judges.

AFFIRMED AS AMENDED.

**Michael B. Miller**
**Attorney at Law**
**P.O. Drawer 1630**
**Crowley, LA 70527-1630**
**(337) 785-9500**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Angela Leonards**

**Kristine D. Smiley**
**Matthew W. Tierney**
**Tierney and Smiley, LLC**
**3535 S. Sherwood Forest Boulevard, Suite 233**
**Baton Rouge, LA 70816**
**(225) 298-0770**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Louisiana Retailers Mutual Insurance Company**
    **Carmichael's Cashway Pharmacy, Inc.**

**GREMILLION, Judge.**

The judgment of the Workers' Compensation Judge (WCJ) is appealed by the employee, Angela Leonards. Her employer, Carmichael's Cashway Pharmacy, Inc., and its insurer, Retailers Casualty Insurance Company (collectively "Carmichael's"), answered the appeal and seeks judicial interest on the credit it was awarded. For the reasons that follow, we affirm as amended.

## FACTS

Ms. Leonards filed a Disputed Claim for Compensation (1008) with the Office of Workers' Compensation (OWC) on July 3, 2007, asserting that she injured her neck in the course and scope of her employment with Carmichael's while bending and lifting some milk. Her neck injury required surgical intervention. On April 23, 2009, Ms. Leonards was awarded temporary total disability benefits. In 2011, Ms. Leonards' benefits were converted to supplemental earnings benefits (SEBs) because it was demonstrated that she was capable of performing light-duty work.

In July 2014, Ms. Leonards underwent a second surgical procedure on her neck. Dr. John Sledge of Lafayette performed this surgery. On August 27, 2014, Ms. Leonards was seen by Dr. Nicole Lanclos, a psychologist, at the behest of the Social Security Administration, for the purpose of undergoing mental status and intellectual testing. Dr. Lanclos diagnosed Ms. Leonards with adjustment disorder with depressed mood, borderline intellectual functioning, lower limits, stress associated with diminished physical functioning, and physical limitations. Dr. Lanclos concluded, "Based on the results of the psychological evaluation of Angela Leonards, she will likely find it difficult to manage full-time employment due to chronic pain."

A functional capacity examination (FCE) was done in October 2015. As a result of the FCE, Dr. Sledge released Ms. Leonards for sedentary work. Dr. Steven

Staires, Ms. Leonards' pain management doctor, also released her for sedentary duty as a result of the FCE.

A second medical opinion was obtained by Carmichael's from Dr. Neil Romero, a Lafayette orthopedic surgeon. Dr. Romero opined that Ms. Leonards was capable of sedentary work.

Dr. Staires referred Ms. Leonards to a second psychologist, Dr. David Landry, in July 2018. Dr. Landry opined that "Ms. Leonards' likelihood of success with long-term employment will be compromised by psychological factors such as poor self-awareness, low frustration tolerance, adjustment difficulties related to chronic pain, and borderline intellectual functioning." Returning to work, therefore, would be difficult for Ms. Leonards "without some other intervention that would improve her functioning."

Dr. Staires was asked in his 2018 deposition about non-physical factors that would affect Ms. Leonards' ability to return to work. He opined that given the passage of time, Dr. Lanclos would need to re-evaluate Ms. Leonards to see whether she is still incapable of working. Dr. Staires admitted that he lacked the clinical expertise to render an opinion on the effects depression might have on Ms. Leonards' testing performance. Dr. Staires also opined, though, that the close proximity of Dr. Lanclos's testing of Ms. Leonards was questionable:

> Well not just that it's 3 or 4 years old, but that it was a month after surgery. She [sic] still in the subacute healing phase. So what she felt herself capable of, and how she may have completed that psychological evaluation at that moment, I think is not consistent with where she is now.

Dr. Mark Zimmerman, a third psychologist, examined Ms. Leonards in 2019. Dr. Zimmerman found that Ms. Leonards functioned cognitively in the normal range. Her problem insight and judgment were normal. She exhibited no gross behavioral abnormalities or indications of hyperactivity or attention difficulties. Dr.

2

Zimmerman found that Ms. Leonards was capable of performing arithmetic and abstract thinking.

Mr. Burt Ashman was Ms. Leonards' vocational rehabilitation counselor. He evaluated Ms. Leonards with a wide-range achievement test and a Slossen Intelligence Test.

Mr. Ashman assessed Ms. Leonards' academic and work histories. Ms. Leonards graduated high school. She was not enrolled in special education programs or remedial classes. Ms. Leonards also completed a secretarial training program at Southern Technical College and a three-year computer technology program at Acadian Technical College.

Ms. Leonards previously worked as a shipping clerk for Body Masters. She was also employed as a dispatcher for the Acadia Parish Sheriff's Office. Ms. Leonards has assembled computers for Computer Mark.

Utilizing the results of the wide range achievement test, the Slossen Intelligence Test, and Ms. Leonards' academic and work histories, Mr. Ashman identified several jobs suitable for her and within her geographic area. Mr. Ashman received approval from Drs. Sledge and Staires for four of those jobs.

Carmichael's filed a motion to terminate Ms. Leonards' SEBs on January 3, 2017, on the grounds that Ms. Leonards had been paid 520 weeks pursuant to La.R.S. 23:1221(3)(d). Carmichael's also asserted that it was entitled to a credit for SEBs paid beyond the allowed 520 weeks. In April 2017, Ms. Leonards filed a motion to modify her SEBs to either temporary total disability or permanent total disability benefits. These motions were heard on July 1, 2021. The WCJ ruled in favor of Ms. Leonards and ordered that she be paid temporary total disability benefits from July 17, 2014, through November 8, 2015, which totaled $25,590.60. That judgment

3

terminated Ms. Leonards' SEBs and awarded Carmichael's a credit of $4,435.83 for

overpayment of SEBs to apply against the temporary total disability benefits.

Ms. Leonards appealed the judgment, and Carmichael's has answered it.

## ASSIGNMENTS OF ERROR

Ms. Leonards asserts:

1.    The workers' compensation judge legally erred and committed manifest error requiring that this appeal be reviewed de novo.

2.    The workers' compensation judge erred in failing to find Ms. Leonards was entitled to permanent and total disability benefits.

3.    The workers' compensation judge erred in excluding Ms. Leonards' Proffer # 1 and #2.

4.    The vocational counselor's complete file was introduced but is not contained in the appeal record, only in the general file.

5.    The workers' compensation judge erred in ordering weekly indemnity payments in the amount of $330.10 per week.

6.    The workers' compensation judge erred in awarding any credit against Ms. Leonards' weekly indemnity benefits after the July 17, 2014 neck surgery.

7.    Was it error for the workers' compensation judge to exclude Proffer # 1 and #2?

Carmichael's asserts that the WCJ erred in not awarding it judicial interest on

the credit it received for overpayment of SEBs.

## ANALYSIS

*Burdens of proof*

The burdens of proof of disabilities and entitlement to compensation in

workers' compensation cases are set forth in La.R.S. 23:1221. Subparagraph (1)(c)

provides for the burden of proof in cases alleging temporary total disability (TTD):

> For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of

4

disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

Permanent total disability is governed by Paragraph (2). As in TTD cases, permanent total disability must be proven by clear and convincing evidence. Entitlement to SEBs must likewise be proven by clear and convincing evidence. The distinction between TTDs, permanent total disability, and SEBs is that an employee can receive SEBs while able to work but not able to earn ninety percent of her pre-injury wages. La.R.S. 23:1221(3).

The clear and convincing burden of proof represents "an 'intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." *Hatcherson v. Diebold, Inc.*, 00-3263, p. 4 (La. 5/15/01), 784 So.2d 1284, 1288. "To prove a matter by clear and convincing evidence means to demonstrate that the existence of the disputed fact is highly probable or much more probable than its nonexistence." *Daniels v. State Through Dep't of Transp. & Dev.*, 52,750, p. 5 (La.App. 2 Cir. 7/17/19), 275 So.3d 998, 1004, *writ denied*, 19-1321 (La. 10/21/19), 280 So.3d 1173.

*Assignment of Error 1:*

In her first assignment of error, Ms. Leonards asserts that the WCJ applied an inappropriate legal standard in adjudicating her case in failing to consider both physical and non-physical factors in determining whether she is disabled. This legal error, she claims, mandates that this court review the case de novo. A second legal error Ms. Leonards asserts is the alleged failure of the WCJ to address her demands for temporary and permanent disability.

5

"Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the reviewing court should make its own independent *de novo* review and assessment of the record." *Campo v. Correa*, 01-2707, p.10 (La. 6/21/02), 828 So.2d 502, 510. We will address Ms. Leonards' contention that one such error was the WCJ's failure to address the demands for temporary and permanent disability.

The WCJ delivered a nineteen-page oral ruling into the record. The totality of this ruling cannot be construed as having failed to address Ms. Leonards' demands. The WCJ recounted in exhaustive detail the medical, psychological, and work history surrounding Ms. Leonards' claims. The WCJ concluded by finding in her favor for the period of July 7, 2014, through November 8, 2015, awarding her temporary total disability benefits. We find no merit to this argument.

Ms. Leonards also asserts that the WCJ legally erred in failing to consider both physical and non-physical factors in finding that she is not disabled. She argues that the case of *Pinkins v. Cardinal Wholesale Supply, Inc.*, 619 So.2d 52 (La.1993) mandates a de novo review and a reversal of the WCJ.

Mr. Pinkins was a fifty-seven-year-old truck driver injured in the course and scope of his employment. He had completed the sixth grade, was semi-literate, and could perform only simple addition and subtraction. Mr. Pinkins was limited to lifting ten to fifteen pounds, restricted from repetitive bending, stooping, crawling, or kneeling, and could not sit for extended periods of time. No realistic prospects for improvement of Mr. Pinkins' condition were projected.

Nonetheless, the employer identified a job it maintained Mr. Pinkins could perform, and it was approved by his physician. The supreme court reversed the courts below, which had found that Mr. Pinkins was precluded from receiving SEBs. The supreme court stated that "under the facts presented by this particular case only,

due to the totality of factors related to a realistic appraisal of access to employment, this claimant's marginal literacy, age and work[-]related disability," Mr. Pinkins was entitled to SEBs, as the employer had failed to prove his earning capacity. *Id*. at 54.

The Louisiana Supreme Court, in *Comeaux v. City of Crowley*, 01-32 (La. 7/3/01), 793 So.2d 1215, held that in determining an injured employee's status as permanently, totally disabled, the WCJ must read La.R.S. 23:1226 *in pari materia* with La.R.S. 23:1221(2). The WCJ in *Comeaux* had opined that La.R.S. 23:1221(2) provided the focus for his inquiry into the employee's permanent total disability status, and that statute discusses only whether the employee is physically able to work. Louisiana Revised Statutes 23:1226(D) reads:

> Prior to the workers' compensation judge adjudicating an injured employee to be permanently and totally disabled, the workers' compensation judge shall determine whether there is reasonable probability that, with appropriate training or education, the injured employee may be rehabilitated to the extent that such employee can achieve suitable gainful employment and whether it is in the best interest of such individual to undertake such training or education.

"[I]t would defy logic and render La.Rev.Stat. 23:1226 meaningless to exclude from consideration the employee's inability to be educated or retrained in determining if such an employee is permanently, totally disabled." *Comeaux*, 793 So.2d at 1222. The totality of circumstances, including the employee's physical restriction to sedentary work and his lack of intellectual capacity to be retrained, led the supreme court to find that he had proven his entitlement to permanent total disability benefits by clear and convincing evidence.

We note that both *Pinkins* and *Comeaux* require fact-specific analyses of each case; indeed, as quoted from *Pinkins* above, the court recognized that the application of its principles results from the factfinding process rather than interdicts it. In other words, a WCJ's decision on whether an employee has proven her case for total

disability, including physical and non-physical factors, is subject to manifest error in all but the rarest of cases.  We decline to review this case de novo.

Because a de novo review is not warranted in this case, the manifest error standard of review is mandated.

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review.  In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.  Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong.  Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."  *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

*Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted).  The manifest error rule in workers' compensation cases extends to the WCJ's findings concerning a workers' disability. *Handy v. Richard's Cajun Country Food*, 93-1537 (La.App. 3 Cir. 6/1/94), 640 So.2d 761.

*Assignment of error 2*:

Ms. Leonards maintains that the WCJ failed to consider the physical and non-physical factors, which indicate that she is totally disabled from employment, either temporarily or permanently.  We have already noted that the WCJ gave extensive consideration of non-physical factors.  The reasons for ruling discussed all three examining psychologists, Ms. Leonards' educational accomplishments, her work history, and her medical history.

There is no dispute over Ms. Leonards' physical condition.  She does not contest that she is physically capable of sedentary work.  This matter involves

whether Ms. Leonards can intellectually perform the tasks of jobs of a sedentary nature.

In finding that Ms. Leonards could perform such work, the WCJ considered her work history, educational background, and the results of her vocational rehabilitation testing as well as the testing performed by three psychologists. Two characterized Ms. Leonards' intellectual capacity as below normal. Dr. Zimmerman did not concur in their analyses, as he opined that her cognitive function and fund of knowledge were intact and age-appropriate, which indicated that she functions in the "normal range." Ms. Leonards possessed normal insight into problems and judgment. Further, neither Dr. Lanclos nor Dr. Landry opined that Ms. Leonards was incapable of performing sedentary work; rather, both expressed the opinion that work would be difficult.

In addition to the differing and equivocal opinions expressed by the psychologists, the WCJ also noted Ms. Leonards' work history. That work history demonstrates her ability to perform sedentary work, including dispatching for the Acadia Parish Sheriff's Office.

The WCJ did not manifestly err in finding Ms. Leonards is not permanently, totally disabled.

*Assignments of error 3 and 7*:

Ms. Leonards complains of the trial court's exclusion of two exhibits that she proffered. Ms. Leonards maintains that Proffer 1 consists of a testimony by Mr. Ashman regarding certain conditions Ms. Leonards sought to impose on Mr. Ashman as precedent to his acceptance as her vocational rehabilitation counselor.

Counsel for Ms. Leonards examined Mr. Ashman based on a letter he had sent Ms. Ashman asking that he consent to conditions such as those outlined in *Crain Brothers, Inc. v. Richard*, 02-1342 (La.App. 3 Cir. 4/9/03), 842 So.2d 523. Mr.

Ashman replied that he refused to consent to those conditions. Carmichael's counsel objected to the relevance of the questioning, which the WCJ sustained. Ms. Leonards proffered the questioning.

We find no error in the WCJ sustaining the objection to the proffers. *Crain Brothers* approved of this type of conditional acceptance of vocational rehabilitation. But *Crain Brothers* was overruled by *Hargrave v. State of La.*, 12-341 (La. 10/16/12), 100 So.3d 786. "[I]n the absence of an evidentiary showing that there was an actual dispute as to the quality of the services of the vocational rehabilitation counselor or the necessity for such services[,]" such conditions may not be imposed. *Id.* at 793.

In *Nero v. Allied Waste Services*, 18-501 (La.App. 3 Cir. 2/6/19), 265 So.3d 1129, *writ denied*, 19-384 (La. 4/29/19), 268 So.3d 1032, this court was faced with similar questioning by the employee's counsel regarding accepting these conditions. The WCJ sustained an objection to relevance. This court affirmed that ruling, citing *Allen v. Affordable Home Furnishings*, 14-338 (La.App. 3 Cir. 10/1/14), 149 So.3d 836, *writ denied*, 14-2285 (La. 1/16/15), 157 So.3d 1132, which also affirmed a relevance objection to identical questioning.

*Assignment of error 4*:

In her fourth assignment of error, Ms. Leonards maintains that Mr. Ashman's records in their entirety were introduced into evidence but are not in the appeal record. During the hearing before the WCJ, counsel for Ms. Leonards sought to introduce the records in their entirety. The WCJ held the record open for supplementation of the record for seven days. A motion to supplement the record was filed by Ms. Leonards and signed by the WCJ. This court has been supplied with a Supplemental Record that contains records from McNabb Rehabilitation Services of Lafayette. Those records total 1,176 pages, the quantity Ms. Leonards maintains should be in the record. This assignment of error lacks merit.

10

*Assignment of error 5*:

Ms. Leonards' fifth assignment of error complains of the amount of indemnity benefits of $330.10 per week. The judgment of April 23, 2009 awarded Ms. Leonards $333.10 per week. The judgment should be amended to reflect the additional $3.00 per week. Her average weekly wage did not change between 2009 and the date of trial. The amount of temporary total disability benefits owed Ms. Leonards from July 17, 2014, through November 8, 2015, is hereby amended to $333.10 per week.

*Assignment of error 6*:

In her final assignment of error, Ms. Leonards asserts that Carmichael's should receive no credit against her weekly indemnity benefits. However, she recycles her argument regarding the nature of the evidence in her previous assignments of error: Dr. Lanclos said she is disabled, and Dr. Staires agrees. For the reasons stated above regarding manifest error, we find that this assignment of error lacks merit.

*Defendants' assignment of error*:

Carmichael's argues that it should have been awarded judicial interest on the credit it received for overpayment of SEBs to Ms. Leonards. Carmichael's cites as authority La.R.S. 23:1201.3(A), which reads in pertinent part:

> Any compensation awarded and all payments thereof directed to be made by order of the workers' compensation judge shall bear judicial interest from the date compensation was due until the date of satisfaction. The interest rate shall be fixed at the rate in effect on the date the claim for benefits was filed with the office of workers' compensation administration.

We find no authority for the proposition that a credit against compensation owed represents a "compensation award" pursuant to Section 1201.3(A). Carmichael's cites no authority for the proposition. We find that the language regarding the

11

calculation of interest "from the date compensation was due until the date of satisfaction" indicates that the statute envisions an actual payment by one party to another on the "date of satisfaction." Because the credit is not a payment Carmichael's would receive on a date of satisfaction, but rather a deduction from what it owes in TTDs for the July 17, 2014, through November 8, 2015, period, no interest is owed on that sum.

## CONCLUSION

Reviewing the record as a whole, we cannot conclude that the WCJ erred in finding that Ms. Leonards failed to prove by clear and convincing evidence that she is entitled to continuing temporary or permanent total disability benefits. Similarly, we conclude that the trial court did not manifestly err in finding that Carmichael's proved that Ms. Leonards is capable of sedentary work. We further find that the WCJ did err in awarding past temporary total disability benefits of $330.10 per week, and we amend the judgment to award Ms. Leonards $333.10 per week for the period of July 7, 2014, through November 8, 2015. We further find that the WCJ did not err in failing to award judicial interest on the credit defendants receive for SEBs paid beyond 520 weeks. All costs of this appeal are to be paid by the parties in equal share.

**AFFIRMED AS AMENDED.**